**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SALVATORE RAUCCI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAUNA360 INC.,<br><br>Defendant. | Case No. 2:26-cv-06505<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff SALVATORE RAUCCI ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendant SAUNA360 INC. (hereinafter "Sauna360" or "Defendant").

## NATURE OF THE ACTION

1. This action seeks to remedy the deceptive and misleading business practices of Sauna360 with respect to the manufacturing, marketing, and sale of Defendant's infrared saunas, hybrid infrared saunas, and infrared kits throughout the United States (hereinafter the "Products").

2. Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that the Products' infrared panels can short circuit, causing them to overheat, posing a risk of serious injury from fire and burn hazards.

3. On September 17, 2026, the Consumer Product Safety Commission published a recall of the Products on its website, designated as Recall number 26-784.[1] Sauna360 has received

[1] Sauna360 Recalls Infrared Saunas, Hybrid Infrared Saunas and Infrared Kits Due to Risk of Serious Injury or Death from Fire and Burn Hazards ("Sauna360 Recall"), CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2026/Sauna360-Recalls-Infrared-Saunas-Hybrid-Infrared-Saunas-and-Infrared-Kits-Due-to-Risk-of-Serious-Injury-or-Death-from-Fire-and-Burn-Hazards, (last visited Oct. 8, 2026).

67 reports of the Products overheating, melting, charring or burning.[2]

4. Defective infrared panels that can short circuit—causing them to overheat and catch fire—pose significant threats to consumers and their property, as the Products can cause serious burns, property damage, and other catastrophic injuries.

5. Consumers who purchased Defendant's Products, such as Plaintiff, reasonably expected that the Products they purchased would be safe for use and would not pose serious fire and burn hazards.

6. Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain defective infrared panels prone to overheating. Knowing of the fire and burn risk is material to reasonable consumers. The presence of this defect was solely within the possession of knowledge of Defendant. This omission leads a reasonable consumer to believe they are not purchasing a product with a known safety defect when in fact they are purchasing a product that poses a serious fire hazard.

7. Consumers, such as Plaintiff, trust manufacturers like Defendant to sell products that are safe to use and are free from known dangerous defects.

8. Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product—the packaging and labels themselves. As such, a reasonable consumer reviewing Defendant's labels and packaging reasonably believes that they are purchasing a product that is safe for use and does not contain any fire hazards. Thus, reasonable consumers would not think that Defendant is omitting that the Products contain or are at risk of containing defective infrared panels.

[2] *Id.*

9. Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, defective infrared panels that can short circuit, causing them to overheat, which is dangerous to one's health, safety, and property. Nevertheless, Defendant does not list or mention this risk anywhere on the Products' packaging or labeling.

10. As set forth below, the Products manufactured, marketed, and sold by Defendant, contain or are at risk of containing a serious fire hazard and are by no means safe for use and thus are entirely worthless.

11. Plaintiff and Class Members paid a premium price for the Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Products' labels. Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

12. Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350. Defendant also breached and continues to breach its warranties regarding the Products.

13. Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) in that (1) this is a class action involving more than 100 class members;

(2) Plaintiff is a citizen of New York and Defendant is a citizen of another state; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

15. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

16. Venue is proper because Plaintiff is a citizen of this District, and a substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

17. Plaintiff Raucci is a citizen and resident of Nassau County, New York.

18. On or about November 2023, Plaintiff Raucci purchased one of Defendant's Products—the Radiant Health Elite E-2h—directly from Defendant via a Regional Representative over the phone. The Product contained or had the risk of containing defective infrared panels prone to overheating and catching fire.

19. Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the safety of the Products, Plaintiff would not have been willing to purchase the Product or pay as much for the Product. Plaintiff purchased and/or paid more for the Product than he would have had he known the truth about the safety risks of the Products.

20. The Product Plaintiff contracted for, paid for, and received, was worthless because it posed a fire hazard and could not be operated safely.

21. Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

22. Defendant Sauna360 Inc. is a corporation organized under the laws of the state of Texas with its principal place of business in Cokato, Minnesota. Defendant is a citizen of Texas and Minnesota. Defendant is the importer and distributor of the Products.

23. Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

**FACTUAL ALLEGATIONS**

24. Defendant manufactures, markets, advertises, and sells traditional saunas, steam saunas, and infrared warm saunas.

25. Consumers, such as Plaintiff, have become increasingly concerned about the safety of products that are being used in their homes. Companies, such as Defendant, have capitalized on consumers' desire for safe products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

26. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe defects, such as infrared panels that can short circuit, causing them to overheat, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain on the Products' packaging or labels.

27. The Products' packaging does not identify the risk of overheating and fire. Indeed, the risk is not listed anywhere on the packaging, nor is there any warning about the potential inclusion of defective infrared panels in the Products. This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, fire hazards.

28. However, the Products contain, or are at risk of containing, defective infrared panels that can short circuit, causing them to overheat and catch fire.

29. Defendant's business is a sophisticated operation that has been in the business of producing, manufacturing, selling, and distributing products for over one hundred years, including producing and manufacturing the defective Products.[3]

30. Defendant is in the unique and superior position of knowing the components used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products and the risks associated with those processes, as well as the ability to test the Products prior to releasing the Products into the stream of commerce. Such knowledge is solely within the possession of Defendant.

31. Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products. Such knowledge is not readily available to consumers like Plaintiff and Class Members.

32. Although Defendant proposes an "in-home repair from a professional installer" as the purported remedy for this dangerous defect, this response is entirely inadequate to compensate Plaintiff and Class Members for their economic injuries. Further, to date, Defendant has not effectuated its recall remedy as Plaintiff Raucci has neither received a replacement part nor been able to contact the professional installer.

33. Pursuant to the recall, Defendant instructed consumers to "stop using the infrared and hybrid saunas immediately." As a result, Plaintiff and Class Members are completely deprived of the use and enjoyment of their premium saunas—which retailed between $6,000 and $13,000—

[3] *About Sauna360*, SAUNA360, https://sauna360.com/about-us, (last visited Oct. 8, 2026).

for an indeterminate period while they await the scheduling and completion of invasive in-home modifications.

34. Furthermore, this purported remedy shifts the burden of Defendant's manufacturing failures onto the consumer, requiring Plaintiff and Class Members to coordinate and oversee contractors performing structural work inside their homes. Plaintiff and Class Members bargained for safe, fully operational, premium saunas, not defective fire hazards requiring post-sale physical retrofitting. Consequently, Plaintiff and Class Members are left with a product worth substantially less than what Defendant advertised and sold, meaning the proposed repair fails to make consumers whole and the economic injury remains.

35. Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the safety of the Products.

36. Therefore, Defendant’s false, misleading, and deceptive omissions regarding the Products containing a fire hazard are likely to continue to deceive and mislead reasonable consumers, as they have already deceived and misled Plaintiff and Class Members.

37. Defendant’s misrepresentations and omissions were material and intentional because consumers are concerned with the safety of the products they purchase. Consumers such as Plaintiff and Class Members are influenced by Defendant’s marketing and advertising campaign and the Products’ labels. Defendant knows that if they had not omitted that the Products contained a fire hazard, then Plaintiff and the Class would not have purchased the Products, or, at the very least, would not have paid nearly as much for the Products.

38. Consumers rely on marketing and information in making purchasing decisions.

39. By omitting that the Products include a fire hazard on the labels of the Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product that could overheat and catch fire.

40. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

41. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and Class Members.

42. In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a product marketed as safe over comparable products not so marketed.

43. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and Class Members in that they: (i) paid a sum of money for Products that were not as Defendant represented; (ii) paid a premium price for Products based on Defendant's false and misleading misrepresentations; (iii) were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant warranted; (iv) were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and (v) were denied the benefit of the properties of the Products Defendant promised.

44. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and Class Members would not have been willing to pay the same amount for

the Products they purchased and/or Plaintiff and Class Members would not have been willing to purchase the Products.

45. Plaintiff and Class Members paid for Products that do not contain a fire hazard. Since the Products do indeed or possibly contain a fire hazard, the Products Plaintiff and Class Members received were worth less than the Products for which they paid.

46. Plaintiff and Class Members all paid money for the Products; however, Plaintiff and Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

47. Plaintiff and Class Members saw the Products' packaging prior to purchasing the Products. Had Plaintiff and Class Members known the truth about the Products, *i.e.*, that they do or possibly contain defective infrared panels, they would not have been willing to purchase them at any price, or, at minimum, would have paid less for them.

## CLASS ALLEGATIONS

48. Plaintiff, individually and on behalf of all others similarly situated, brings this class action pursuant to Fed. R. Civ. P. 23.

49. The proposed Class is defined as follows:

> **Nationwide Class:** All persons within the United States who purchased Defendant's affected Products.
>
> **New York subclass:** All persons within the state of New York who purchased Defendant's affected Products.

Plaintiff reserves the right to modify, change, or expand the definitions of the proposed Classes based upon discovery and further investigation.

50. *Numerosity:* The proposed Class is so numerous that joinder of all members is impracticable. About 41,580 units were sold nationwide.[4]

51. *Commonality:* Questions of law or fact common to the Class include, without limitation:

a. Whether the Products in question were unsafe;

b. Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

c. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

d. Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents and safety of its Products;

e. Whether Defendant had a duty to disclose, prior to purchase, the defective nature of the Products to consumers;

f. Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public;

g. Whether Defendant's conduct constitutes an unlawful breach of the implied warranty of merchantability;

h. Whether Defendant's conduct constitutes an unlawful breach of express warranties;

i. Whether Defendant's fraudulently omitted material information in its interactions with consumers;

j. Whether Defendant was unjustly enriched; and

k. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

[4] Sauna360 Recall, *supra* n.1.

52. *Typicality:* The claims or defenses of Plaintiff are typical of the claims or defenses of the Class. Class Members were injured and suffered damages in substantially the same manner as Plaintiff, Class Members have the same claims against Defendant relating to the same course of conduct, and Class Members are entitled to relief under the same legal theories asserted by Plaintiff.

53. *Adequacy:* Plaintiff will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions.

54. *Predominance:* Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendant owed a duty to Plaintiff and the Class and whether Defendant breached its duties predominate over individual questions such as measurement of economic damages.

55. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

56. *Manageability:* Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

57. The Class may be certified pursuant to Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

58. The Class may also be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

59. Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of New York GBL § 349
### (On behalf of Plaintiff and the New York Subclass)

60. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

61. New York General Business Law § 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . . ."

62. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and, as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant.

63. Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

64. Defendant's improper consumer-oriented conduct—including failing to disclose that its Products contained a fire hazard—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendant's Products and to use the Products when they otherwise would not have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

65. Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

66. Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

67. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law § 349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

68. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Violations of New York GBL § 350**
**(On behalf of Plaintiff and the New York Subclass)**

69. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

70. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

71. N.Y. Gen. Bus. Law § 350-a(1) provides, in part, as follows:

> The term 'false advertising', including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual. . . .

72. Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products inasmuch it misrepresents that the Products are safe for use and doesn't list that the Products contain defective infrared panels.

73. Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled, dangerous, and entirely worthless. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

74. Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

75. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

76. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

77. Defendant made the material omissions described in this Complaint in its advertising and on the Products' packaging and labeling.

78. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

79. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**(On behalf of Plaintiff and the Nationwide Class)**

80. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

81. The sale of Defendant's Products created an implied warranty of merchantability pursuant to U.C.C. § 2-314.

82. Defendant, as the manufacturer, marketer, and distributor, impliedly warranted that the Products are merchantable as safe.

83. Plaintiff and Class Members purchased the Products relying on Defendant's skill and judgment in properly manufacturing, packaging and labeling the Products. Plaintiff Raucci is in vertical privity with Defendant having purchased the Product directly from Defendant via a sales representative.

84. Defendant breached the warranty implied in the contract for the sale of the Products because they could not "pass without objection in the trade under the contract description," the

Products were not "of fair average quality within the description," were not "adequately contained, packaged, and labeled as the agreement may require," and did not "conform to the promise or affirmations of fact made on the container or label if any." *See* U.C.C. § 2-314(2) (listing requirements for merchantability). As a result, Plaintiff and Class Members did not receive the goods as impliedly warranted by Defendant to be merchantable.

85. Defendant knowingly breached the implied warranties by including defective infrared panels in the Products sold to Plaintiff and the Class without properly notifying them of their inclusion in the Products.

86. Within a reasonable time after it knew or should have known, Defendant did not change the Products' label to warn of the defect.

87. As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiff and Class Members have been injured and sustained damages.

88. Defendant has actual notice of the warranty claims alleged herein due to its recall of the Products.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**[in the alternative]**
**(On behalf of Plaintiff and the Nationwide Class)**

89. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

90. Plaintiff pleads this cause of action in the alternative to his other claims at law.

91. Defendant represented to Plaintiff and Class Members that its Products were reliable, merchantable, and safe to use.

92. The Products fail to conform to the performance, durability, capability, and reliability that Defendant represented and were therefore of a substantially lesser quality and value than Defendant represented.

93. Defendant knew or should have known that its Products could not conform to its representations because of the defective infrared panels.

94. Defendant mispresented, concealed, and omitted material information concerning the defect found in its Products.

95. The fire hazard and the facts misrepresented, concealed, and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase their Products.

96. Defendant mispresented, concealed, and omitted material information concerning the fire hazard in order to induce Plaintiff and Class Members to purchase their Products at a substantially higher price than what they would otherwise have paid.

97. Plaintiff and Class Members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing the Products.

98. Plaintiff and Class Members would not have purchased the Products if they knew that they were prone to overheating, or they would have only paid substantially less.

99. Plaintiff and Class Members conferred substantial benefits on Defendant by purchasing defective Products at a premium without receiving a product that conformed to Defendant's representations.

100. Defendant knowingly and willingly accepted and enjoyed these benefits.

101. Defendant's retention of these benefits would be inequitable because Defendant obtained benefits to the detriment of Plaintiff and Class Members when Plaintiff and Class Members did not obtain their promised benefits.

102. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members are entitled to restitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered against Defendant as follows:

a. Certifying the Nationwide Class and New York Subclass under Rule 23;

b. Designating Plaintiff as the class representative and the undersigned as class counsel;

c. Awarding declaratory relief and corresponding injunctive relief;

d. Requiring Defendant to pay restitution and disgorge revenues obtained by wrongful acts;

e. Requiring Defendant to pay all actual, statutory, and punitive damages permitted by law;

f. Awarding attorneys' fees and costs to Plaintiff and the Classes; and

g. Providing for all other just and proper relief.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 8, 2026

Respectfully submitted,

*/s/ Gary F. Lynch*
Gary F. Lynch (NY 5553854)
Nicholas A. Colella*
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243
gary@lcllp.com
nickc@lcllp.com

*Counsel for Plaintiff and the Proposed Class*
**Pro hac vice* forthcoming